[Civ. No. 2250.   Third Appellate District.—May 9, 1921.]

ABRAHAM ROSENBERG et al., etc., Appellants, v. S. M. ROGERS, etc., Respondent.

[1] CONTRACT—DELIVERY OF FIG CROP—ACTION FOR BREACH—EXCUSE OF PERFORMANCE—ERRONEOUS INSTRUCTION.—An instruction in an action for damages for breach of a written contract to deliver a crop of figs, which in effect advised the jury that the defendant was released from any obligation under the contract in consequence of the destruction of the fruit by frost or rain, involved an invasion of the exclusive province of the jury to determine the weight of the evidence, where the evidence showed that the figs were not destroyed but only damaged.

[2] ID.—ACCEPTANCE OF DAMAGED FIGS—ERRONEOUS INSTRUCTION.— Where under a contract of sale of a fig crop the buyers had the option to accept and pay for damaged figs or to reject them, it was error in an action for damages for failure to deliver to give an instruction which carried the implication that the buyers might receive or accept the figs and then refuse to pay for them.

APPEAL from a judgment of the Superior Court of Merced County. E. N. Rector, Judge. Reversed.

The facts are stated in the opinion of the court.

Terry W. Ward for Appellants.

F. W. Henderson for Respondent.

BURNETT, J.—The appeal is from the judgment in favor of defendant. The case was here before and the judgment in favor of defendant was reversed. (44 Cal. App. 196, [186 Pac. 366].) The action was to recover damages for the failure of defendant to deliver a portion of her crop of figs to plaintiffs and was based upon a written contract executed by the parties on January 29, 1918. The terms of that contract, as far as applicable to the controversy herein, are set out and construed in said decision of this court, and the discussion needs no repetition. However, we may quote from that decision the following statement: "The cause was tried by the court upon the theory that defendant was under no obligation to deliver any figs that did not measure up to the standard fixed by the contract, and specifically was under no obligation to tender any figs that were of poor quality, off color, dark and defective and not in good merchantable condition." This court held that such theory was entirely contrary to the express provision of the contract, and for that reason reversed the cause. Upon the second trial respondent relied upon the defense that she was released from any obligation to deliver or to tender the damaged figs by reason of the fact that appellants notified her that they would not accept said figs. There is evidence in the record to support her contention as to said notification and, although controverted, it presented a question for the determination of the jury. No reason has been suggested why it was not competent for appellants to thus relieve respondent from any obligation to deliver or tender said damaged fruit. In other words, the consideration involves a question of fact and not of law. It is true that, at the request of plaintiffs, the court gave this instruction to the jury: "Under the terms of said contract the only condition by which defendant could be released from her

obligation to deliver to plaintiffs said figs was the destruction thereof by frost, or other similar unavoidable casualty.'' This must be read, however, in connection with the following, given at the request of defendant: "Defendant admits that she did not deliver all the figs raised on her place in the year 1918 and contends that she offered to deliver to plaintiffs all the figs raised on her place, but plaintiffs refused to accept the ones in question; if, from the evidence you find this to have been the case, you will find for the defendant.''

Thus considered, it substantially amounted to a charge that it was the legal duty of defendant to deliver the figs unless she was excused from the delivery by the refusal of plaintiffs to accept them.

[1] But an insuperable difficulty in the way of affirmance of the judgment is injected by this instruction given on request of respondent: "The contract in this case expressly releases the seller, defendant herein, from her obligation to deliver any portion of the fruit contracted for, owing to its destruction by frost or other unavoidable casualty, to wit, rain.'' If the jury followed this instruction there was nothing to do but to find a verdict for the defendant regardless of what they believed from the evidence. The instruction would not have been more objectionable if it had been couched in these words: "The defendant is released by the terms of the contract from her obligation to deliver any portion of the fruit for the reason that it was destroyed by frost or other unavoidable casualty, to wit, rain.'' By said statement the court in effect instructed the jury that the defendant is released from any obligation under the contract in consequence of the destruction of the fruit. If the court had stated that under the terms of the contract the defendant would be released from any obligation to deliver any portion of the fruit that might be destroyed by frost or rain, it would be a proper interpretation of the intention of the parties, but even this might have been misleading, since there was no evidence that the figs were destroyed.

But, as given, the instruction involved an invasion by the court of the exclusive province of the jury to determine the weight of the evidence. It was for them to find

whether the conditions were such as to relieve the defendant from any obligation under the contract. This, of course, will not be disputed. If the evidence had shown, without conflict, that the figs were destroyed by frost or rain, it could be held that the instruction was not prejudicial, but the evidence disclosed, on the contrary, that they were not destroyed but only damaged.

Nor can we say that the instruction was cured by the giving of any other instruction on the subject. Assuming that in another instruction the determination of the question was left to the jury, we would have an irreconcilable conflict without being able to say which instruction the jury followed.

It would also be impossible to conclude that the jury based their verdict solely upon the theory that defendant was absolved from liability by reason of the refusal of the plaintiffs to accept the figs. We might so hold, if the evidence as to that had all been in favor of respondent, but, as before indicated, there was a sharp conflict, and it cannot be said that the jury adopted respondent's theory.

[2] Another instruction given by the court at the request of the defendant was as follows: "The contract in this case provides among other things as follows: 'It is agreed that should any fruit tendered on this contract not conform with the above terms and conditions (the same having already been stated to you) it shall be optional with the buyer to reject same, or take such fruit in, assort and weigh back at seller's expense and reject any portion of the lot not so conforming without in either case relieving seller from the obligation to deliver any other portion of the fruit herein contracted for.'

"I charge you that the plaintiff in this action was under no obligation to receive or pay for any figs of defendant which did not conform with the terms and conditions of the contract."

Under the evidence introduced the jury were really not concerned with the proper interpretation of that part of the contract. The obligation of appellants was not in question. The only issue related to the liability of the defendant to deliver the figs and whether she was relieved by the refusal of appellants to accept them. Besides, as

we view it, the instruction was erroneous because it carried the implication that appellants might receive or accept the figs and then refuse to pay for them. In other words, the jury might justly infer from said instruction that appellants could deprive her of the damaged figs, and decline to pay anything for them. So believing, they would readily agree that the contract was unjust and would not be disposed to hold her to an observance of its requirement as to said delivery. The truth is, however, that plaintiffs simply had the option to accept and pay for the damaged figs or to reject them. They could not keep the figs and the money. In fact, they could not act capriciously in rejecting the figs. The law would exact of them good faith and fair dealing in exercising their option as to the fruit which might not conform to the terms of the contract.

Appellants ask the court "not only to reverse the judgment of the trial court, but to order the trial court to enter judgment for plaintiffs for the whole amount prayed for together with all costs." We cannot direct such judgment in favor of appellants. We might do so if there were no legal defense presented by the answer, in other words, if plaintiffs were entitled to judgment upon the pleadings, but such is not the case, as we view it.

We think the judgment should be reversed, and it is so ordered.

Finch, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 7, 1921.

Angellotti, C. J., Lawlor, J., and Sloane, J., voted for granting of petition.